NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Michael BENEVENTO et al., d/b/a M. Benevento Sand & Gravel Company, Respondents.

No. 5849.

United States Court of Appeals First Circuit.

Dec. 29, 1961.

Margaret M. Farmer, Atty., Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin J. Welles, Atty., Washington, D. C., on the brief, for petitioner.

Julius Kirle, Boston, Mass., for John Benevento, respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

The Beneventos, father and son, are engaged in the sand and gravel business in Wilmington, Massachusetts. During the summer of 1960 they became involved in labor difficulties which triggered a charge by Hoisting & Portable Engineers Union, Local 4, International Union of Operating Engineers, AFL-CIO. General Counsel for the National Labor Relations Board issued a complaint based on the charge and after hearing a trial examiner found that the respondents had refused to bargain with the Union in violation of § 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158(a) (1, 5). The Board affirmed the trial examiner's findings and conclusions and issued a remedial order in the usual terms which it asks this court to enforce.

The Board rested its assertion of jurisdiction on a finding by the trial examiner based only upon an admitted allegation in the General Counsel's amended complaint. His finding was: "During the calendar year preceding the issuance of the complaint, respondent sold products valued in excess of $50,000 to Red-E-Mix Co. of Reading, Massachusetts, which company during the same calendar year purchased and received, from sources outside the Commonwealth of Massachusetts, products [1] valued in excess of $50,000."

So far as appears from the record before us, the respondents themselves are not engaged in interstate commerce but do only a purely local business. But it by no means follows that their activities are necessarily outside the ambit of federal control. Resting its holding upon the long established doctrine that "the power of Congress extends to the protection of interstate commerce from interference or injury due to activities which are wholly intrastate," page 605, 59 S.Ct. page 671, the Court several years ago in N. L. R. B. v. Fainblatt, 306 U.S. 601, 604, 59 S.Ct. 668, 670, 83 L.Ed. 1014 (1939), said: "It has been settled by repeated decisions of this Court that an employer may be subject to the National Labor Relations Act although not himself engaged in commerce." [2] And certainly, as the Court has repeatedly recognized, see Polish Alliance v. N. L. R. B., 322 U.S. 643, 647, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944), and cases cited, Congress exercised its power over interstate commerce to the fullest extent when in § 10(a) of the Act it empowered the Board "to prevent any person from engaging in any unfair labor practice [listed in section 8] affecting commerce" and in § 2(7) said: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

But, broad though the Board's power may be it is not unlimited. "Scholastic reasoning may prove that no activity is isolated within the boundaries of a single State, but that cannot justify absorption of legislative power by the United States over every activity." Polish Alliance v.

---

1. The Board assumes in its brief, and so may we, that the "products" referred to was cement which Red-E-Mix Co. combined with the respondents' sand and gravel to form concrete.

2. The Labor Management Relations Act, 1947, like the National Labor Relations Act, in § 2(6), 29 U.S.C.A. § 152(6) defines "commerce" as meaning, *inter alia*, "trade, traffic, commerce, transportation, or communication among the several States."

N. L. R. B., supra at 650, 64 S.Ct. at 1200. "The authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce 'among the several States' and the internal concerns of a state. That distinction between what is national and what is local in the activities of commerce is vital to the maintenance of our federal system." N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937).

█ Thus the Board's jurisdiction is necessarily subject to bounds and the criterion for determining where those bounds lie is the effect, if any, of purely local action upon interstate commerce. "And whether or not particular action in the conduct of intrastate enterprises does affect that commerce in such a close and intimate fashion as to be subject to federal control, is left to be determined as individual cases arise." Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 222, 59 S.Ct. 206, 214, 83 L.Ed. 126 (1938).

█ The Board's jurisdiction, therefore, is not to be decided by the application of a formula, as in Siemons Mailing Service, 122 NLRB 81, 85 (1958), on which the Board relied in the case at bar, wherein the Board said that it "has concluded that it will best effectuate the policies of the act if jurisdiction is asserted over all nonretail enterprises which have an outflow or inflow across state lines of at least $50,000, whether such outflow or inflow be regarded as direct or indirect." On the contrary, the impact, if any, of a purely intrastate activity upon interstate commerce must be determined by the Board as a matter of fact in each case as it arises. Consolidated Edison Co. v. N. L. R. B., supra at 223, 59 S.Ct. 206. See also Mr. Justice Black's concurring opinion in Polish Alliance, supra at page 652, 64 S.Ct. at page 1201, wherein, citations omitted, he said: "The doctrine that Congress may provide for regulation of activities not themselves interstate commerce, but merely 'affecting' such commerce, rests on the premise that in certain fact situations the federal government may find that regulation of purely local and intrastate commerce is 'necessary and proper' to prevent injury to interstate commerce. * * * In applying this doctrine to particular situations this Court properly has been cautious, and has required clear findings before subjecting local business to paramount federal regulation."

██ Here we have no such findings. Nor indeed do we have any evidence upon which such findings might be made. We only know that the respondents extracted sand and gravel from a bank in Wilmington, Massachusetts, and after processing sold it to a concern in a nearby town which mixed it with cement purchased from outside Massachusetts and then sold the resulting concrete, so far as we know, only within Massachusetts. Whether cessation of operations by the respondents would or would not be likely to curtail the operations of Red-E-Mix to the extent of cutting off or reducing its importations of cement is left entirely to conjecture. For all we know, other sources could easily supply Red-E-Mix with all of the sand and gravel it needed for the operation of its business, for we may take judicial notice of the fact that such material is not at all in short supply in the area. And the existence of an alternative source of supply is not immaterial in the present connection as it was in N. L. R. B. v. Fainblatt, supra, and N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226 (1940). In those cases the employers were processors of materials coming to them in interstate commerce who after processing shipped their products in interstate commerce. They were links in a chain of interstate transactions and obviously a break in the link would break the chain. Here, however, the respondents were not links in a chain. They were the originators of a product which so far as we know never left the state of origin. The question is whether the respondents' operation "affected" com-

merce, and whether it did or not may depend, perhaps not entirely but in part at least, upon whether Red-E-Mix could readily supply its needs for sand and gravel by purchase from other producers in the neighborhood, or whether it would have to shut down and cease importing cement if the respondents' operation should come to a halt because of labor trouble.

■ Clear findings of fact based upon legally sufficient evidence must be made by the Board to support its assertion of jurisdiction. N. L. R. B. v. Reliance Fuel Oil Corp., Docket No. 26806, 2nd Cir., November 13, 1961.

A decree will be entered remanding the case to the Board for further proceedings consistent with this opinion.